JANVIER, Judge.
This suit results from the death of Edward Neal Monroe who was killed at about 5:15 in the morning, on June 5th, 1954, when he drove his motorcycle into the rear of a moving automobile owned and operated by Edmond D. Grappe. The suit is brought by the widow of the deceased, she having since remarried Delbert Fariss. She seeks recovery in her own behalf as widow and also for the use and benefit of the two minor children, Sharon Elaine Monroe and Kathleen Ann Monroe. The defendants are Edmond D. Grappe and Marquette Casualty Company, Grappe’s liability insurance carrier. From a judgment dismissing the suit plaintiff has appealed.
The accident, which took place on what is known as the Air Line Highway which *237 runs from New Orleans to Baton Rouge, occurred a short time after Grappe had driven his automobile across one-half of the highway, across the width of the neutral ground, and, after stopping while in the neutral ground, had crossed to the far lane of the other roadway, and had turned to his left towards Baton Rouge.
Monroe, on his motorcycle, was also going in the direction of Baton Rouge, and he ran it into the rear of the automobile driven by Grappe.
Grappe says that he had taken his car from a parking lot which was on the side of the highway, had driven across the first roadway and had reached the far lane of the other roadway, had turned left, and had gone a distance of about 75 or 80 feet when Monroe drove his motorcycle at high speed into the rear of the automobile. He says that he stopped in the neutral ground for about a second, looked to his right and saw the motorcycle approaching; that at that time it was about 1,000 or 1,200 feet away, and that it “had not topped the hill yet.” He explained by saying that to his right there was a slight rise in the road, between his car and the approaching motorcycle.
There were no actual eyewitnesses to the occurrence but a sergeant of the State Police, Nile L. Mack, arrived soon after-wards and made measurements which are most illuminating. He says that he measured the skid marks of the motorcycle and that they extended 93 feet to a point in the roadway where there was debris which indicated that at that point the motorcycle had crashed into the rear of the automobile. He says that that point was 65 feet from the end of the neutral ground which would indicate that the automobile had turned and proceeded towards Baton Rouge a distance of 65 feet before it was struck. The officer also said that the motorcycle had proceeded an additional 40 feet after crashing into the rear of the automobile. He says too that the body of Monroe had gone an additional 40 feet beyond the motorcycle. It is not clear whether he means that the body of Monroe was 80 feet from the point at which the impact had occurred or that both the motorcycle and the body of Monroe were 40 feet beyond that point.
Henry Dedetta also gave testimony on which there were so many different rulings by the District Judge that we cannot tell whether it was all ruled objectionable or whether part of the testimony of Dedetta was admitted. We think that, while his testimony should not have been excluded, there should have been a ruling to the effect that it was admissible but that the District Judge should have determined the extent of the effect to be given to it.
Dedetta was an employee of a private detective agency and was assigned to the watching of a building which was a short distance from the point at which the accident occurred. He says that his attention was attracted to a motorcycle which was proceeding towards Baton Rouge and that he was impressed with “the noise that it was making. It was kind of backfiring and speeding up the line.” If his testimony is to be given any weight, it would indicate that the motorcycle was proceeding at a terrifically high speed. The objection was based on the fact that Dedetta admitted that he could not state that the motorcycle to which he directed his attention was the same one which only a very few moments afterwards was involved in the accident.
Even if the testimony of Dedetta be entirely excluded, the record leaves not the slightest doubt that Monroe was proceeding, on his motorcycle at tremendous speed and that, on a dry roadway, in broad daylight, he crashed into the rear of the moving automobile with such force that his motorcycle was completely demolished and the rear of the automobile sustained great damage.
Monroe’s widow, plaintiff, testified that he had been a motorcycle enthusiast for many years; that he had the habit of going to motorcycle races and engaging *238 in contests of speed. She said that the night before the accident he had gone to a meeting of a motorcycle club at about 7:30 o’clock, but she did not know whether he had gone there to watch “moving pictures of European motorcycle racing.” He had not returned home that night, but apparently was on his way home when the accident occurred at 5:15 the next morning.
We think it unnecessary to discuss the testimony at greater length. Seldom have we seen a case in which the evidence indicated greater negligence than is found here. We agree with the District Judge who, in rendering judgment dismissing the suit, said that although there may have been some negligence on the part of Grappe, he felt “that the actions of the deceased constituted contributory negligence of such a nature as to prevent recovery.”
The judgment appealed from is affirmed at the cost of appellant.
Affirmed.
REGAN, J., absent, takes no part.